FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAY 11  PM 2:38

LORETTA G. WHYTE
        CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BONNIE A. BLANCHARD            CIVIL ACTION
for C.A.B.

VERSUS                         NUMBER: 04-1189

JO ANNE B. BARNHART,           SECTION: "R"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration discontinuing the Supplemental Security Income ("SSI") benefits of plaintiff-in-interest herein, C.A.B. (Rec. docs. 9, 10).

Bonnie Blanchard, mother of C.A.B., filed an application for SSI benefits on behalf of her son on July 16, 1996, with a protective filing date of July 1, 1996, alleging disability as of March 21, 1996. (Tr. pp. 68-70, 80). In a "Medical History and Disability Report" completed around the same time, a fast heart rate and deformed teeth were identified as C.A.B.'s disabling conditions. (Tr. pp. 82-87). Plaintiff's application for SSI benefits was denied initially and upon reconsideration. (Tr. pp. 58-61, 64-65). Pursuant to his request, a hearing de novo before



an Administrative Law Judge ("ALJ") went forward on May 11, 1998 at which plaintiff, who was represented by counsel, appeared and testified. (Tr. pp. 66-67, 151). On May 29, 1998, the ALJ issued a written decision in which he concluded that plaintiff was disabled within the meaning of the Social Security Act as of March 21, 1996. (Tr. pp. 148-155). In his favorable decision, the ALJ recommended that plaintiff's continued entitlement to SSI benefits be re-evaluated within twenty-four months due to the possibility of medical improvement. (Tr. p. 153).

In keeping with the ALJ's recommendation, plaintiff's disability status was reviewed by the Commissioner in 2001 who, by notices issued in December of that year, determined that plaintiff's disability ceased as of December 1, 2001. (Tr. pp. 156, 157, 158-161). Plaintiff then requested that his SSI benefits be continued pending his appeal of the cessation determination. (Tr. pp. 162-164). He filed a formal request for reconsideration and a hearing before a Disability Hearing Officer ("DHO") went forward on October 30, 2002 with plaintiff, his mother, and his grandmother in attendance. (Tr. pp. 165-171, 172-182). On November 1, 2002, the DHO issued a written decision upholding the termination of benefits. (Tr. pp. 183-194). Following that unfavorable decision, plaintiff requested a hearing de novo before an ALJ as well as continued SSI benefits pending the outcome of the

review process. (Tr. pp. 198-199, 195-197). That hearing went forward on August 14, 2003 at which plaintiff, who was represented by counsel, and his parents appeared and testified. (Tr. pp. 33-53). On December 4, 2003, the ALJ issued a written decision in which he concluded that plaintiff was no longer disabled as of December 31, 2001. (Tr. pp. 10-25). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 569-572). It is from that unfavorable decision that plaintiff seeks judicial review pursuant to 42 U.S.C. §1383(c)(3).

In his cross-motion for summary judgment, plaintiff essentially argues that he suffers from various impairments (i.e., asthma, learning disabilities, dental deformities, and chronic rhinitis) which cause severe limitations and which functionally equal the criteria of unspecified conditions set forth in the Listing of Impairments. (Rec. doc. 9).

Relevant to the issues to be decided by the Court are the following findings made by the ALJ:

1. [t]he claimant was found to be disabled within the meaning of the Social Security Act beginning March 21, 1996.

2. [o]n May 29, 1998, the time of the most recent favorable medical decision that the claimant was disabled, his condition functionally equaled the criteria of a listing

     in the Listing of Impairments.

3.  [t]he medical evidence establishes that there has been improvement in the claimant's medical impairment since May 29, 1998.

4.  [n]one of the exceptions to the requirement for medical improvement listed in 20 CFR Section 416.994a(e) and (f) applies in this case.

5.  [t]he claimant has no impairment or combination of impairments that meets or equals the severity of any impairment listed in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4.

6.  [t]he medical evidence establishes that the claimant currently has asthma, specific learning disorder in reading and spelling, and chronic rhinitis.

7.  [t]hese are severe impairments within the meaning of <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985) and the Regulations.

8.  [t]he testimony at the hearing was generally consistent with _____ does not substantiate the continuation of his previous disability or establish \_\_\_ existence of a new disability.[1]/

9.  [t]he limitations resulting from the effects of the claimant's impairment do meet, medically equal or functionally equal the criteria of any of the listed impairments in Appendix 1, Subpart P, Regulations No. \_\_. (20 CFR §416.994a(b)(2)).

10.  [t]he claimant does not have a medically determinable physical or mental impairment that results in marked and severe functional limitations.

11.  [t]he claimant has not been under a "disability" as defined in the Social Security Act, at any time from December 31, 2001, through the date of this decision.

---

[1]/ Due to photocopying error, the omitted words were illegible.

4

(20 CFR §416.994a(g)(2)).

(Tr. pp. 24-25).

Judicial review of the Commissioner's decision is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

Title 20 C.F.R. §416.994a sets forth the following inquiries the Commissioner must make in determining whether a child's disability continues or ends:

1.  has there been medical improvement in the child's impairment(s)? If so,

2.  does the child's impairment(s) meet or medically or functionally equal the criteria of a condition set forth in the Listing of Impairments? If not,

3.  is the child's impairment(s) disabling under the analysis set forth in 20 C.F.R. §416.924?

Title 20 C.F.R. §416.924, in turn, requires the Commissioner to make the following determinations:

1.  is the child engaged in substantial gainful activity? If not,

2.  does the child have a medically determinable severe impairment(s)? If so,

3.  does the child's impairment(s) meet or medically or functionally equal the criteria of a condition set forth in the Listing of Impairments?

See also <u>Verrett v. Commissioner of Social Security</u>, 2001 WL 179922 at *1 n.7 (E.D. La. Feb. 20, 2001).

In determining whether a child's impairment is functionally equivalent to one set forth in the Listing of Impairments, the Commissioner considers the child's limitations in the following six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and

manipulating objects; caring for oneself; and, health and physical well-being. 20 C.F.R. §416.926a(g)-(1). To be functionally equal to a listing and thus of listing-level severity, the child must have "marked" limitations in two of the six domains or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(d). A "marked" limitation is one that is more than moderate but less than extreme, one that interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(2)(i). An "extreme" limitation is one that is more than marked, one that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(3)(i).

Plaintiff's mother was the first witness to take the stand at the administrative hearing held on August 14, 2003. She testified that although plaintiff was well-mannered and obtained A's and B's in conduct at school, he suffered from comprehension problems and had received one "D" and the rest "F's" in his substantive courses in the previous school year. Plaintiff, who was scheduled to enter the eighth grade in the upcoming school year, had missed some eighty-three days in the 2002-2003 session due to illnesses. Results of standardized testing provided to plaintiff's mother revealed that he came in at the fifty percentile mark on the national median composite but obtained extremely low scores in

reading comprehension. On IQ testing, plaintiff had achieved a score of 76.

Plaintiff's mother was then asked to elaborate on plaintiff's impairments. Plaintiff was missing ten teeth due to a birth defect, for which he was receiving treatment which he could not afford if his SSI benefits were discontinued. He also suffered from asthma and sometimes had trouble breathing. Plaintiff had taken Cipro for a time which caused stomach problems and resulted in plaintiff having to take Zelnorm and Miralax for relief. He additionally suffered from a comprehension problem, headaches, and a low immune system. With the exception of plaintiff's stomach problems and headaches, conditions of more recent vintage, plaintiff's mother testified that there had been no improvement to his teeth, heart problem, or asthma since the time that benefits had been awarded back to 1996. (Tr. pp. 37-47).

Plaintiff's father was next to take the stand. He testified that plaintiff was not a behavioral problem but was sick often. As a result, plaintiff was able to only occasionally accompany his father on their shrimp boat. (Tr. pp. 47-49). Plaintiff's attorney then argued that although plaintiff's conditions did not satisfy the criteria of any of those set forth in the Listing of Impairments, the combination of his impairments was of functionally equivalent severity. (Tr. pp. 49-51). Upon questioning by the

8

ALJ, plaintiff testified that he spent his free time watching TV, playing video games, or riding bikes with his friends, the latter activity he did more of in the summer. Plaintiff understood that he had to stay in school to better his position in life and he felt that he could finish high school if he worked at it. Despite his best efforts to stay healthy, plaintiff was simply sick a great deal of the time. (Tr. pp. 51-53).

In his favorable decision of May 29, 1998, the ALJ found that plaintiff suffered from mitral regurgitation and a history of supraventricular tachycardia, both of which were controlled with medication. The ALJ further determined that plaintiff had deformed teeth that were in need of surgery. The ALJ then went on to find that plaintiff's conditions were functionally equal to Listing 112.02.[2]/ He made that finding based on Peabody test results and

---

[2]/Listing 112.02 provides that a child will be considered disabled if he suffers from:

*Organic Mental Disorders*: Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain. The history and physical examination or laboratory tests, including psychological or neuropsychological tests, demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental state and associated deficit or loss of specific cognitive abilities, or affective changes, or loss of previously acquired functional abilities.
   The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
   A. Medically documented persistence of at least one of the following:
      1. Developmental arrest, delay or regression; or

plaintiff's deformed teeth which resulted in, respectively, a

---

    2. Disorientation to time and place; or
    3. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
    4. Perceptual or thinking disturbance (e.g., hallucinations, delusions, illusions, or paranoid thinking); or
    5. Disturbance in personality (e.g., apathy, hostility); or
    6. Disturbance in mood (e.g., mania, depression); or
    7. Emotional lability (e.g., sudden crying); or
    8. Impairment of impulse control (e.g. disinhibited social behavior, explosive temper outbursts); or
    9. Impairment of cognitive function, as measured by clinically timely standardized psychological testing; or
    10. Disturbance of concentration, attention, or judgment;
    AND
    B. Select the appropriate age group to evaluate the severity of the impairment.

    \* \* \* \* \* \* \* \* \* \* \* \*

    2. For children (age 3 to attainment of age 18), resulting in at least two fo the following:
    a. Marked impairment in age-appropriate cognitive/communicative function, documented medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
    b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
    c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, which such information is needed and available) and including, if necessary, appropriate standardized tests; or
    d. Marked difficulties in maintaining concentration, persistence, or pace.

marked limitation in cognition/communication and a marked limitation in social functioning. (Tr. pp. 148-155).

In his cross-motion for summary judgment, plaintiff points to documentary evidence establishing that he was, at one time, placed in Special Education classes because he was classified as having "other health impairments" and was noted to exhibit the characteristics of a student with learning disabilities; that he is missing a number of teeth due to a birth defect; that he has heart problems which include pulmonic insufficiency, mitral regurgitation, and tricuspid regurgitation; that he has a history of tachycardia and heart problems for which he was taking Lanoxin and Corgard; that he has severe asthma, chronic rhinitis, and recurrent sinusitis; and, that he has specific learning disorders in reading and spelling. (Rec. doc. 9, p. 4). Although plaintiff concedes that "... the evidence shows marked improvements in claimant's cardiac condition, he still has severe impairments, which include asthma, learning disabilities, dental deformities and chronic rhinitis. The limitations resulting from the affect of the claimant's impairments do meet the criteria of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 (20 CFR Section 416.994a(b)(2). The above listed impairments result in severe functional limitations." (Id.). Nowhere in plaintiff's motion, however, does he identify which specific Listing he

11

believes has been met. Absent such identification, plaintiff has thus failed to sustain his summary judgment burden of proof on that issue.

In terms of functional equivalence, plaintiff also fails to identify two broad areas of functioning that he believes he has marked limitations in or one broad area in which he suffers from an extreme limitation. As noted earlier, plaintiff's condition was deemed to be functionally equivalent to Listing 112.02[3]/ in 1998 due to marked limitations in cognition/communication and social functioning based on Peabody test results and his congenital tooth defect. By the latter part of 2001 when plaintiff's case was reviewed by the Commissioner, dental work had been begun and plaintiff's teachers uniformly reported that he was well-behaved in class, that he got along well with peers, and that he was good-mannered and courteous to teachers and adult figures at school. (Tr. pp. 278-299). At the administrative hearing, plaintiff's mother reiterated that he was not a behavior problem and plaintiff himself testified that he enjoyed riding bikes with his friends. When plaintiff was psychologically evaluated by Dr. William Fowler on November 3, 2001, he reported normal peer relationships, had

---

[3]/ Nowhere in the record was plaintiff assessed as suffering from an organic mental disorder, the diagnostic description in the introductory paragraph of Listing 112.02.

good expressive and receptive language, and had wholly intelligible speech. (Tr. pp. 461-462). In light of this evidence, no limitation in the area of social functioning is apparent.[4]

The Court having determined that plaintiff did not suffer from a marked limitation in social functioning when his SSI benefits were terminated in December of 2001, to establish medical equivalence and his consequent entitlement to continued SSI benefits, he would have to prove that he suffered from an extreme limitation in one of the other broad areas of functioning enumerated in 20 C.F.R. §416.925a(g),(h),(j),(k), or (l). Here again, plaintiff fails to identify which of the five domains he believes he has an extreme limitation in. As plaintiff was previously found to be disabled based on a marked limitation in cognition/communication, the Court will evaluate the evidence against the most analogous domain set forth in the Final Rules, that being acquiring and using information as set forth in §416.925a(g). On October 3, 2001, school officials reported that, with the exception of English, plaintiff was making satisfactory progress and was maintaining passing grades in all general education classes. He had no communication needs. (Tr. p. 251).

---

[4] When the "Final Rules" for determining disability in children's SSI case took effect, social functioning was essentially replaced with the domain of interacting and relating with others.

When observed, plaintiff was on-task 100% of the time. (Tr. p. 258). As noted above, when evaluated by Dr. Fowler on November 13, 2001, plaintiff had good expressive and receptive language, wholly intelligible speech, and fair judgment and memory. On intelligence testing, plaintiff obtained a verbal IQ score of 76, a performance IQ score of 79, and a full scale IQ score of 76. (Tr. pp. 461-462). It was this very evidence which the Commissioner considered and relied upon in discontinuing plaintiff's SSI benefits. (Tr. pp. 158-161). As an extreme limitation in acquiring/using information or cognition/communication has not been established, the Court believes that the Commissioner's decision is supported by substantial evidence and should be affirmed.

## RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en</u> <u>banc</u>).

New Orleans, Louisiana, this ____ day of May _____, 2005.

_____
UNITED STATES MAGISTRATE JUDGE